Ciklin, J.,
concurring specially.
Because I believe this is somewhat of a “sleeper issue,” I write a cautionary concurrence about what may admittedly be an obscure yet potential pitfall for an unwary judge or practitioner.
I agree with the dissent’s suggestion that the defendant’s original sentence may very well have been “entirely appropriate for the crime appellant committed, given his criminal history.” But, respectfully, that notion misses the point of the majority opinion: A unanimous three-judge panel of this court ordered that the original sentence be vacated and that Davis be resen-tenced with the commensurate panoply of due process rights.
By ordering that the original life sentence be vacated because it was based on a conviction that had been set aside, that life sentence—by operation of law—became an immediate nullity, entitling this criminal defendant to a de novo resentencing proceeding. That meant, as Justice Cantero forcefully characterized it, a “clean slate” including the “full panoply” of due process rights as to “all issues bearing on the *141 proper sentence.”[1] Galindez, 955 So.2d at 525 (citations omitted).
Yet, here, the lower court expressed its mistaken view that it was not appropriate to consider Davis’ substantial evidence of his rehabilitation or the over two dozen certificates of achievement that he had earned in prison or any of his accomplishments or personal history since the now vacated original sentence was imposed. The trial court’s decision in this regard was black letter judicial error because Davis was denied his clean slate.
With due respect to the dissent, there is no need for the majority to “pour over” the trial judge’s resentencing determination or his analysis as to why he would not start with a clean slate at a resentencing. We need not search for any nuanced wording or phrases uttered by the lower court. Even a cursory review of the record reveals it to be immediately apparent that a legally cognizable criminal resentencing proceeding did not take place below, as ordered by this appellate court and in the manner that the law required.
To his credit, the trial judge admitted that he was not prepared “to come in at the end here and to say let’s take a [another] look at the crime that was committed and [at Davis’s updated personal history since the original sentence] ... to resen-tence him.”
While the trial court was not prepared to conduct this review, that is precisely what solid constitutional precepts required. The failure to do so sends it back to the trial court—almost automatically.
Thus, the majority need not rely on “flimsy notion[s]” or negotiate “the drawing of lines” to decide that the trial court either did not understand the legal significance of the court’s unanimous remand in Davis I or did not understand the due process requirements attendant to resen-tencing a criminal defendant, or both.
Again, an obscure potential pitfall for an unwary judge or practitioner.
As the majority opinion indicates in providing direct quotes from the trial judge, this is not a matter of “scouring” the words of the trial judge to find a reason to once again reverse and remand for resen-tencing. The trial court’s decision to decline to clean the slate and thereafter conduct a de novo sentencing hearing was plain record error that denied Davis due process under the Fourteenth Amendment to the United States Constitution and article 1, section 9 of the Florida Constitution.
We can only hope that a third trial judge will take the necessary steps to obviate the need for a Davis III.

. Davis’s offenses occurred in 1994, and thus Florida’s sentencing guidelines applied at the time. Davis’s guideline prison sentencing range was 7 years to 11.5 years. If Davis qualified as a habitual violent felony offender (HVFO) or habitual felony offender, then he could be sentenced up to life imprisonment regardless of the guideline recommendation. Davis was, in fact, sentenced to life imprisonment as an HVFO. As it turned out, however, that designation became an erroneous designation because, as we explained in Davis I, the threshold conviction needed to brand Davis as an HVFO (and as the trial court expressly used as its basis to impose a life sentence), was declared a legal nullity.